IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION

No. 4:16-CV-221-FL

| | |
|---|---|
| MARY D. WARREN, ) | |
| ) | |
| Plaintiff/Claimant, ) | |
| ) | |
| ) | **MEMORANDUM AND** |
| v. ) | **RECOMMENDATION** |
| ) | |
| CAROLYN W. COLVIN, Acting ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

This matter is before the court on the parties' cross-motions for judgment on the pleadings [DE-15, -17] pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. Claimant Mary D. Warren ("Claimant") filed this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) seeking judicial review of the denial of her applications for a period of disability and Disability Insurance Benefits ("DIB"). The time for filing responsive briefs has expired and the pending motions are ripe for adjudication. Having carefully reviewed the administrative record and the motions and memoranda submitted by the parties, it is recommended that Claimant's Motion for Judgment on the Pleadings be denied, Defendant's Motion for Judgment on the Pleadings be allowed, and the final decision of the Commissioner be affirmed.

## I. STATEMENT OF THE CASE

Claimant protectively filed applications for a period of disability, DIB, and Supplemental Security Income ("SSI") on December 6, 2012, alleging disability beginning July 20, 2010.[1] (R.

---
[1] Claimant's application for SSI was denied on December 14, 2012, because her income exceeded the threshold for eligibility (R. 112–19), and only Claimant's Title II claim was adjudicated by the Administrative Law Judge ("ALJ") (R. 16).

157–72). Her Title II claim was denied initially and upon reconsideration. (R. 49–77). A hearing before the ALJ was held on November 19, 2014, at which Claimant, represented by counsel, and a vocational expert ("VE") appeared and testified. (R. 29–47). On February 23, 2015, the ALJ issued a decision denying Claimant's request for benefits. (R. 13–28). On June 21, 2016, the Appeals Council denied Claimant's request for review. (R. 1–5). Claimant then filed a complaint in this court seeking review of the now-final administrative decision.

## II. STANDARD OF REVIEW

The scope of judicial review of a final agency decision regarding disability benefits under the Social Security Act ("Act"), 42 U.S.C. § 301 *et seq.*, is limited to determining whether substantial evidence supports the Commissioner's factual findings and whether the decision was reached through the application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). "The findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g). Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). While substantial evidence is not a "large or considerable amount of evidence," *Pierce v. Underwood*, 487 U.S. 552, 565 (1988), it is "more than a mere scintilla . . . and somewhat less than a preponderance." *Laws*, 368 F.2d at 642. "In reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (quoting *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996), *superseded by regulation on other grounds*, 20 C.F.R. § 416.927(d)(2)). Rather, in conducting the "substantial evidence" inquiry, the court's review is limited to whether the ALJ analyzed the relevant evidence

and sufficiently explained his or her findings and rationale in crediting the evidence. *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439–40 (4th Cir. 1997).

## III. DISABILITY EVALUATION PROCESS

The disability determination is based on a five-step sequential evaluation process as set forth in 20 C.F.R. § 404.1520 under which the ALJ is to evaluate a claim:

> The claimant (1) must not be engaged in "substantial gainful activity," i.e., currently working; and (2) must have a "severe" impairment that (3) meets or exceeds [in severity] the "listings" of specified impairments, or is otherwise incapacitating to the extent that the claimant does not possess the residual functional capacity to (4) perform . . . past work or (5) any other work.

*Albright v. Comm'r of the SSA*, 174 F.3d 473, 475 n.2 (4th Cir. 1999). "If an applicant's claim fails at any step of the process, the ALJ need not advance to the subsequent steps." *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995) (citation omitted). The burden of proof and production during the first four steps of the inquiry rests on the claimant. *Id.* At the fifth step, the burden shifts to the ALJ to show that other work exists in the national economy which the claimant can perform. *Id.*

When assessing the severity of mental impairments, the ALJ must do so in accordance with the "special technique" described in 20 C.F.R. § 404.1520a(b)–(c). This regulatory scheme identifies four broad functional areas in which the ALJ rates the degree of functional limitation resulting from a claimant's mental impairment(s): activities of daily living; social functioning; concentration, persistence or pace; and episodes of decompensation. *Id.* § 404.1520a(c)(3). The ALJ is required to incorporate into his written decision pertinent findings and conclusions based on the "special technique." *Id.* § 404.1520a(e)(3).

## IV. ALJ'S FINDINGS

Applying the above-described sequential evaluation process, the ALJ found Claimant "not

3

disabled" as defined in the Act. At step one, the ALJ found Claimant had not engaged in substantial gainful activity since the alleged onset date. (R. 18). Next, the ALJ determined Claimant had the severe impairments of mild facet degenerative disc disease, diabetes mellitus, diabetic macular edema and retinopathy, and hypertension. *Id.* However, at step three, the ALJ concluded these impairments were not severe enough, either individually or in combination, to meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 18–19).

Prior to proceeding to step four, the ALJ assessed Claimant's residual functional capacity ("RFC") finding Claimant has the ability to perform a full range of sedentary work.[2] (R. 19–23). In making this assessment, the ALJ found Claimant's statements about her limitations not entirely credible. (R. 21). At step four, the ALJ concluded Claimant was capable of performing her past relevant work as a receptionist. (R. 23).

Claimant contends the ALJ erred in failing to fully credit Claimant's testimony and the opinion of her treating physician, resulting in an RFC that overstates her abilities, and that the ALJ should have applied the Medical Vocational Guidelines (the "Grids"), which would have resulted in a directed finding that Claimant was disabled. Pl.'s Mem. [DE-16] at 6–10.

## V. DISCUSSION

### A. The ALJ's RFC Determination

An individual's RFC is the capacity an individual possesses despite the limitations caused

---

[2] Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met. 20 C.F.R. § 404.1567(a); S.S.R. 96-9p, 1996 WL 374185, at *3 (July 2, 1996). "Occasionally" generally totals no more than about 2 hours of an 8-hour workday. "Sitting" generally totals about 6 hours of an 8-hour workday. S.S.R. 96-9p, 1996 WL 374185, at *3. A full range of sedentary work includes all or substantially all of the approximately 200 unskilled sedentary occupations administratively noticed in 20 C.F.R. Part 404, Subpart P, Appendix 2, Table 1. *Id.*

by physical or mental impairments. 20 C.F.R. § 404.1545(a)(1); *see also* S.S.R. 96-8p, 1996 WL 374184, at *1 (July 2, 1996). "[T]he residual functional capacity 'assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions' listed in the regulations." *Mascio v. Colvin*, 780 F.3d 632, 636 (4th Cir. 2015) (quoting S.S.R. 96-8p). The RFC is based on all relevant medical and other evidence in the record and may include a claimant's own description of limitations arising from alleged symptoms. 20 C.F.R. § 404.1545(a)(3); *see also* S.S.R. 96-8p, 1996 WL 374184, at *5. Where a claimant has numerous impairments, including non-severe impairments, the ALJ must consider their cumulative effect in making a disability determination. 42 U.S.C. § 423(d)(2)(B); *see Hines v. Bowen*, 872 F.2d 56, 59 (4th Cir. 1989) ("[I]n determining whether an individual's impairments are of sufficient severity to prohibit basic work related activities, an ALJ must consider the combined effect of a claimant's impairments.") (citations omitted).

In assessing Claimant's RFC, the ALJ first summarized Claimant's hearing testimony as follows. Claimant lives with her mother. She has a driver's license but mostly rides with others because she does not feel comfortable driving while on pain medication, and her sister drove her to the hearing. She stopped working in July 2010 due to neck and back pain, and x-rays from that period showed she had a herniated disc. Claimant has been seeing Dr. Skahill for approximately 10 years for back pain, which she described as a dull ache with periods of severe pain that sometimes radiates to her right leg. She also described neck pain that sometimes radiates to her arms, shoulders, and right side, and she has to sit at an angle or shift positions to be comfortable. Pain affects her ability to concentrate and wakes her at night. She gets headaches once or twice a day, or about 10 headaches a month, each lasting 45 minutes to one hour, for which she takes ibuprofen or a

5

prescribed medication and lies down. She can stand five minutes before needing to rest and feels most comfortable when she is lying down. Claimant's diabetes causes her hands and feet to feel like there are pins in them, and she characterized her diabetes as out of control. Her daily activities are reading the Bible and watching game shows on television, and her mother cooks and cleans with the help of her sisters. She can sometimes prepare simple foods, such as eggs, but does not wash clothes or dust. (R. 20–21). The ALJ found that Claimant's "medically determinable impairments could reasonably be expected to cause the alleged symptoms," but that her "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible." (R. 21). The ALJ explained that the medical evidence did not support the degree of limitation alleged, Claimant received only conservative treatment from her primary care provider, did not seek care from pain clinics or specialists, and required no emergent care or hospitalization during the relevant period. *Id.*

The ALJ next considered Claimant's medical records. First, the ALJ examined Claimant's treatment for back and neck pain: a May 31, 2013 x-ray of the lumbar spine showed only minimal spondylosis and mild facet degenerative disease with minimal posterior osteophyte formation at L4-L5; Claimant's treating primary care physician Dr. Skahill occasionally noted lumbar tenderness and neck stiffness upon exam, but generally found she had good range of motion of her arms and neck with no signs of swelling, redness, or loss of sensation or reflexes, there was no indication that she had difficulty walking or was in acute distress, and he prescribed Neurontin and occasionally hydrocodone-acetaminophen; and Claimant was not referred to a specialty physician or to physical therapy, nor were injections or other more aggressive forms of treatment recommended. Next, the ALJ considered Claimant's long-term history of hypertension with intermittent periods of elevated

6

blood pressure, but noted that Claimant was compliant with her anti-hypertensive medications, she reported no secondary symptoms such as pre-syncope, syncope, heart palpitations, or chest pain, and although she sporadically reported headaches they were generally relieved with over-the-counter medications. Finally, regarding Claimant's diabetes, diabetic macular edema, and diabetic retinopathy, the ALJ noted that Claimant had a long-term history of diabetes pre-dating her alleged onset date of disability, when her blood glucose became elevated her insulin and medications were adjusted, although she had some intermittent complaints of numbness her physical examinations showed no evidence of decreased sensation, and despite her diabetic retinopathy and macular edema, her corrected visual acuity was 20/40 in the right eye and 20/20 in the left eye. *Id.*

The ALJ considered a consultative examination conducted by Dr. Sewell on March 23, 2013. The ALJ noted that Claimant complained of pain in her back, neck, right shoulder, arm, and leg, that on examination a straight leg raise test was positive on the right, she exhibited tenderness of her thoracic and upper lumbar spine, she had reduced range of motion of her shoulders (120 degrees out of 150 degrees), and had moderate difficulty squatting, but also that Claimant ambulated with a normal gait, demonstrated full strength and range of motion of her upper and lower extremities (except as noted with respect to her shoulders), had intact sensation, and was able to get up and down from the exam table with no difficulty.[3] The ALJ gave partial weight to Dr. Sewell's opinion that Claimant could sit normally during an eight-hour workday, had mild limitations with standing, walking, lifting, and carrying, did not need an assistive device, could occasionally perform postural maneuvers, and had no visual limitations. The ALJ considered that Dr. Sewell conducted a thorough

---

[3] The ALJ stated that Claimant "was able to get up and down from the exam table with difficulty," but Dr. Sewell's findings indicate Claimant had "no difficulty" in performing this task. (R. 22, 302).

7

physical examination of Claimant and her conclusions were consistent with her physical exam results and those of Dr. Skahill. However, the ALJ noted that Dr. Sewell's conclusions regarding Claimant's ability to stand, walk, lift, and carry were vague. (R. 21–22).

The ALJ gave little weight to the opinion of the state agency medical consultant that Claimant could perform a full range of medium work, noting Claimant's ongoing issues with spinal tenderness and some decreased range of motion of her lumbar spine and shoulders, as well as her history of hypertension and diabetes. The ALJ also gave little weight to the three medical source statements completed by Dr. Skahill, which indicated Claimant could perform less than sedentary work. The ALJ found the opinions inconsistent with Dr. Skahill's clinical findings and imaging results, which documented only sporadic lumbar tenderness and neck stiffness, and also found they were based primarily on Claimant's self reports. The ALJ concluded that the degree of Claimant's functional limitations was not so severe as to preclude all work activity and that Claimant could perform a full range of sedentary work. (R. 22–23).

### 1. The Opinion Evidence

When assessing a claimant's RFC, the ALJ must consider the opinion evidence. 20 C.F.R. § 404.1545(a)(3). Regardless of the source, the ALJ must evaluate every medical opinion received. *Id.* § 404.1527(c). In general, the ALJ should give more weight to the opinion of an examining medical source than to the opinion of a non-examining source. *Id.* § 404.1527(c)(1). Additionally, more weight is generally given to opinions of treating sources, who usually are most able to provide "a detailed, longitudinal picture" of a claimant's alleged disability, than non-treating sources such as consultative examiners. *Id.* § 404.1527(c)(2). When the opinion of a treating source regarding the nature and severity of a claimant's impairments is "well-supported by medically acceptable

clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" it is given controlling weight. *Id.* However, "[i]f a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." *Craig*, 76 F.3d at 590.

If the ALJ determines that a treating physician's opinion should not be considered controlling, the ALJ must then analyze and weigh all of the medical opinions in the record, taking into account the following non-exclusive list: (1) whether the physician has examined the applicant, (2) the treatment relationship between the physician and the applicant, (3) the supportability of the physician's opinion, (4) the consistency of the opinion with the record, and (5) whether the physician is a specialist. *Johnson v. Barnhart*, 434 F.3d 650, 654 (4th Cir. 2005) (citing 20 C.F.R. § 404.1527). The weight afforded such opinions must be explained. S.S.R. 96-2p, 1996 WL 374188, at *5 (July 2, 1996); S.S.R. 96-6p, 1996 WL 374180, at *1 (July 2, 1996). An ALJ may not reject medical evidence for the wrong reason or no reason. *See Wireman v. Barnhart*, No. 2:05-CV-46, 2006 WL 2565245, at *8 (W.D. Va. Sept. 5, 2006). "In most cases, the ALJ's failure to consider a physician's opinion (particularly a treating physician) or to discuss the weight given to that opinion will require remand." *Love-Moore v. Colvin*, No. 7:12-CV-104-D, 2013 WL 5350870, at *2 (E.D.N.C. Sept. 24, 2013) (citations omitted).

Claimant contends the ALJ erred in attributing only little weight to the opinion of Dr. Skahill, a treating physician, while attributing greater weight to the opinion of Dr. Sewell, a one-time consultative examiner. Pl.'s Mem. [DE-16] at 10. Claimant points to Dr. Skahill's significant longitudinal experience as her treating physician and the consistency of his opinions with one another and with Claimant's testimony and the medical record, arguing that Dr. Skahill offers a

9

unique perspective that cannot be obtained from the medical records alone. *Id.* The Commissioner contends the ALJ applied the appropriate legal standards and substantial evidence supports the ALJ's evaluation of the opinion evidence. Def.'s Mem. [DE-18] at 10–15.

Dr. Skahill's findings on the medical source statements vary somewhat, but consistently indicate Claimant is not capable of sedentary work, citing primarily her spinal issues, pain, and diabetes. (R. 292–95, 339–42, 373–76). The ALJ acknowledged the long-term treatment relationship between Claimant and Dr. Skahill, but found his opinions to be inconsistent with his own treatment notes and other evidence of record. (R. 20, 22); *see Craig*, 76 F.3d at 590 ("If a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight."). In discussing Claimant's back and neck impairments, the ALJ noted that a May 31, 2013 x-ray of the lumbar spine showed only minimal spondylosis and mild facet degenerative disease with minimal posterior osteophyte formation at L4-L5. (R. 21, 318). The ALJ also discussed Dr. Skahill's treatment notes, stating Dr. Skahill occasionally noted lumbar tenderness and neck stiffness upon exam, but generally found Claimant had good range of motion in her arms and neck with no signs of swelling, redness, or loss of sensation or reflexes, and there was no indication that she had difficulty walking or was in acute distress. (R. 21–22, 271–78, 350, 352–55, 357–58, 381–84); *see Reiser v. Colvin*, No. 5:14-CV-850-FL, 2016 WL 1183092, at *6 (E.D.N.C. Mar. 28, 2016) (finding substantial evidence supported ALJ's decision to give little weight to a medical opinion that was inconsistent with the treatment notes and examination findings). In discussing Claimant's hypertension, diabetes, diabetic macular edema, and diabetic retinopathy, the ALJ acknowledged Claimant at times had elevated blood pressure and glucose, but that these were managed with medication adjustments and her vision

10

was noted to be 20/15 in her left and right eyes without corrective lenses at the consultative examination. (R. 21, 271–81, 300, 348–55).

Additionally, the ALJ noted that the medical source statements were check-box forms and not specific written statements. (R. 22); *see Schaller v. Colvin*, No. 5:13-CV-334-D, 2014 WL 4537184, at *16 (E.D.N.C. Sept. 11, 2014) ("[S]ince the opinion is in the form of a questionnaire, the ALJ was entitled to assign it less weight than a fully explanatory and narrative opinion because such form opinions do not offer adequate explanation of their findings.") (citations omitted). The ALJ also cited evidence in support of the finding that Dr. Skahill's opinion was based primarily on Claimant's self-reports. (R. 22, 377–80). *See Reiser*, 2016 WL 1183092, at *5 ("While some reliance on a patient's subjective complaints is permissible, a physician errs in relying overly much upon subjective complaints."). The ALJ found the conservative nature of Claimant's treatment was inconsistent with Dr. Skahill's opinion regarding Claimant's inability to perform even sedentary work, noting that he prescribed Neurontin and occasionally hydrocodone-acetaminophen, but did not refer Claimant to a specialty physician or to physical therapy and did not recommend injections or other more aggressive forms of treatment. (R. 21–22, 271–78, 350, 352–55, 357–58, 381–84); *Bright v. Colvin*, No. 4:13-CV-226-FL, 2014 WL 5871348, at *10 (E.D.N.C. Nov. 12, 2014) (finding no error in the ALJ's decision to give a treating physician's opinion only some weight because, among other things, the opinion was inconsistent with the conservative nature of the claimant's treatment).

Finally, the ALJ gave more weight to the opinion of Dr. Sewell, a consultative examiner, who found Claimant could sit normally during an eight-hour workday but that due to back pain she would have mild limitations on standing, walking, lifting, and carrying, as well as some postural limitations.

11

(R. 22). The ALJ, noting that Dr. Sewell had an opportunity to conduct a thorough examination of Claimant, found Dr. Sewell's conclusions to be supported by the examination results, as well as Dr. Skahill's treatment notes, but vague as to the extent of some of the restrictions and thus gave the opinion partial weight. *Id.* Even though Dr. Sewell was not a treating physician, she was an examining physician, and the ALJ sufficiently explained why Dr. Sewell's opinion was entitled to more weight than that of Dr. Skahill. *Cf. Brown v. Colvin*, No. 4:12-CV-247-FL, 2014 WL 1282255, at *7 (E.D.N.C. Mar. 27, 2014) (finding no error in the ALJ's decision to reject a treating physician's opinion for that of a non-examining state agency opinion and distinguishing the case from *Radford v. Colvin*, 734 F.3d 288, 295 (4th Cir. 2013), because the claimant's treatment was sparse, the ALJ explained her reasons for the weight afforded, and the state agency opinions were more consistent with the record as a whole).

The ALJ applied the correct standard, considered appropriate factors—including treatment relationship, supportability, and consistency—and explained the reasons for the weight afforded the medical opinion evidence. "An ALJ's determination as to the weight assigned to a medical opinion generally will not be disturbed absent some indication that the ALJ has dredged up 'specious inconsistencies,' *Scivally v. Sullivan*, 966 F.2d 1070, 1077 (7th Cir. 1992), or has failed to give a sufficient reason for the weight afforded a particular opinion, see 20 C.F.R. § 404.1527(d) (1998)." *Dunn v. Colvin*, 607 F. App'x 264, 267 (4th Cir. June 1, 2015). It is not within the province of the court to reweigh the evidence, even if the court might reach a different result, where the ALJ has considered and analyzed all the relevant evidence and the decision is supported by substantial evidence, as is the case here. *Mastro*, 270 F.3d at 176 (citing *Craig*, 76 F.3d at 589). Accordingly, the ALJ's analysis of the opinion evidence provides no basis for remand.

## 2. Credibility

When assessing a claimant's RFC, it is within the province of the ALJ to determine a claimant's credibility. *See Shively v. Heckler*, 739 F.2d 987, 989–90 (4th Cir. 1984) ("Because he had the opportunity to observe the demeanor and to determine the credibility of the claimant, the ALJ's observations concerning these questions are to be given great weight.") (citation omitted). Federal regulation 20 C.F.R. § 404.1529(a) provides the authoritative standard for the evaluation of subjective complaints of pain and symptomology, whereby "the determination of whether a person is disabled by pain or other symptoms is a two-step process." *Craig*, 76 F.3d at 593–94. First, the ALJ must objectively determine whether the claimant has medically documented impairments that could cause his or her alleged symptoms. S.S.R. 96-7p, 1996 WL 374186, at *2 (July 2, 1996); *Hines v. Barnhart*, 453 F.3d 559, 564 (4th Cir. 2006). If the ALJ makes this first determination, he must then evaluate "the intensity and persistence of the claimant's pain[,] and the extent to which it affects her ability to work," *Craig*, 76 F.3d at 595, and whether the claimant's statements are supported by the objective medical record. S.S.R. 96-7p, 1996 WL 374186, at *2; *Hines*, 453 F.3d at 564–65. Objective medical evidence may not capture the full extent of a claimant's symptoms, so where the objective medical evidence and subjective complaints are at odds, the ALJ should consider all factors "concerning the individual's functional limitations and restrictions due to pain and other symptoms." S.S.R. 96-7p, 1996 WL 374186, at *3 (showing the complete list of factors). The ALJ may not discredit a claimant solely because his or her subjective complaints are not supported by objective medical evidence. *See Craig*, 76 F.3d at 595–96. But neither is the ALJ required to accept the claimant's statements at face value; rather, the ALJ "must make a finding on the credibility of the individual's statements based on a consideration of the entire case record."

13

S.S.R. 96-7p, 1996 WL 374186, at *2; *see Taylor v. Astrue*, No. 5:10-CV-263-FL, 2011 WL 1599679, at *4-8 (E.D.N.C. Mar. 23, 2011) (concluding the ALJ properly considered the entire case record to determine that claimant's subjective complaints of pain were not entirely credible), *adopted by* 2011 WL 1599667 (Apr. 26, 2011).

The ALJ considered Claimant's testimony regarding the severity and effects of her back and neck pain and uncontrolled diabetes, including all the evidence noted by Claimant. (R. 20–21). The ALJ found that Claimant's "medically determinable impairments could reasonably be expected to cause the alleged symptoms," but that her "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible." (R. 21). The ALJ explained that the medical evidence did not support the degree of limitation alleged, noting that Claimant received only conservative treatment from her primary care provider, did not seek care from pain clinics or specialists, and required no emergent care or hospitalization during the relevant period. *Id.*; *see Dunn*, 607 F. App'x at 275 ("[I]f all that the claimant needs is conservative treatment, it is reasonable for an ALJ to find that the alleged disability is not as bad as the claimant says that it is."); *Richardson v. Colvin*, No. 4:14-CV-00125-FL, 2015 WL 5725546, at *6 (E.D.N.C. Aug. 11, 2015) (finding conservative treatment lends little support to claims of debilitating symptoms), *adopted by* 2015 WL 5737613 (Sept. 30, 2015). The ALJ acknowledged Claimant's symptoms resulted in some degree of limitation and imposed a restriction to sedentary work after considering her testimony, the medical records, and the opinion evidence. The ALJ properly considered the entire case record in making a credibility finding, and the determination is supported by substantial evidence. *See Mickles v. Shalala*, 29 F.3d 918, 929 (4th Cir. 1994) ("Subject only to the substantial evidence requirement, it is the province of the [ALJ], and not the courts, to make credibility determinations.").

14

Accordingly, the ALJ's credibility assessment does not require remand.

In sum, the ALJ's RFC determination, including his consideration of the opinion evidence and Claimant's testimony, is supported by substantial evidence. Because the ALJ found that Claimant can perform her past relevant work as a receptionist, which is characterized as sedentary work, the ALJ did not err in failing to apply the Grids. *See Pass*, 65 F.3d at 1203 ("If an applicant's claim fails at any step of the process, the ALJ need not advance to the subsequent steps."); *Cook v. Colvin*, No. 1:11-CV-87, 2014 WL 317847, at *4 (M.D.N.C. Jan. 29, 2014) ("The Grids are relevant only at step five of the sequential analysis."). Accordingly, it is recommended that the decision of the Commissioner be affirmed.

## VI. CONCLUSION

For the reasons stated above, it is RECOMMENDED that Claimant's Motion for Judgment on the Pleadings [DE-15] be DENIED, Defendant's Motion for Judgment on the Pleadings [DE-17] be ALLOWED, and the final decision of the Commissioner be affirmed.

IT IS DIRECTED that a copy of this Memorandum and Recommendation be served on each of the parties or, if represented, their counsel. Each party shall have until **August 18, 2017** to file written objections to the Memorandum and Recommendation. The presiding district judge must conduct his or her own review (that is, make a de novo determination) of those portions of the Memorandum and Recommendation to which objection is properly made and may accept, reject, or modify the determinations in the Memorandum and Recommendation; receive further evidence; or return the matter to the magistrate judge with instructions. *See, e.g.*, 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3); Local Civ. R. 1.1 (permitting modification of deadlines specified in local rules), 72.4(b), E.D.N.C. Any response to objections shall be filed within **14 days** of the filing of the

objections.

If a party does not file written objections to the Memorandum and Recommendation by the foregoing deadline, the party will be giving up the right to review of the Memorandum and Recommendation by the presiding district judge as described above, and the presiding district judge may enter an order or judgment based on the Memorandum and Recommendation without such review. In addition, the party's failure to file written objections by the foregoing deadline will bar the party from appealing to the Court of Appeals from an order or judgment of the presiding district judge based on the Memorandum and Recommendation. *See Wright v. Collins*, 766 F.2d 841, 846-47 (4th Cir. 1985).

SUBMITTED, this the 4 day of August 2017.

Robert B. Jones, Jr.
United States Magistrate Judge